UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT CARLSON, BRIAN ROBILLARD, ALISON HALLIFAX, MATTHEW PETERSON, JOSH FREI, and TYLER PARNELL, | CASE NO. 2:25-cv-00514 |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS |
| v. | |
| MAYOR ANGELA BIRNEY, in her individual and official capacity, FIRE CHIEF ADRIAN SHEPPARD, in his individual and official capacity, and CATHRYN LAIRD in her individual and official capacity, | |
| Defendants. | |

## 1. INTRODUCTION

This matter comes before the Court on a Renewed Motion to Dismiss filed by Defendants Mayor Angela Birney, Fire Chief Adrian Sheppard, and Human Resources Director Cathryn Laird's (collectively, "Defendants"). Dkt. No. 22. Plaintiffs are six former City of Redmond firefighters who were terminated after refusing to comply with the City's COVID-19 vaccination mandate for healthcare

workers. They bring claims under 42 U.S.C. § 1983 against Defendants in both their official and individual capacities, alleging violations of their First Amendment rights to free exercise of religion and free speech and their Fourteenth Amendment right to equal protection. Having reviewed the First Amended Complaint ("FAC"), the briefs, and the record, the Court GRANTS the motion and DISMISSES the case with prejudice.

## 2.  BACKGROUND

The Court is familiar with the underlying facts. A related Title VII action brought by these same Plaintiffs against the City of Redmond, *Carlson v. City of Redmond*, No. 2:22-cv-01739-JNW, resulted in summary judgment for the City on all claims. Dkt. No. 157 in that case ("December 5 Order"). There is substantial overlap between that case (i.e., the "Title VII case") and this one, but the Court does not rely on the Title VII case in resolving the merits of this motion. To situate the analysis that follows, the Court briefly recounts the facts as alleged by Plaintiffs: in August 2021, Governor Inslee issued Proclamation 21-14 requiring healthcare workers, including firefighters, to be vaccinated against COVID-19 by October 18, 2021. Redmond implemented the Proclamation through Mayor Birney's September 30, 2021, Executive Order. Plaintiffs requested and initially received religious exemptions, which were revoked by the Executive Order. The City and the firefighters' union negotiated Letters of Agreement identifying accommodation positions, but those positions were filled while Plaintiffs were on FMLA and PFML leave. Plaintiffs were terminated between April and May 2022.

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 2

### 3. LEGAL STANDARD

The Court will grant a motion to dismiss only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" that a defendant did something wrong. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). In other words, a plaintiff must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

When considering a motion to dismiss, courts must accept factual allegations pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 3

## 4.  DISCUSSION

### 4.1    Plaintiffs' *Monell* claims are dismissed.

Defendants move to dismiss Plaintiffs' 42 U.S.C. § 1983 claims against the City of Redmond. Plaintiffs do not identify the City as a defendant, but their official-capacity suit against Mayor Angela Birney, Fire Chief Adrian Sheppard, and HR Director Cathryn Laird is functionally a claim against the City of Redmond. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). Known as *Monell* claims, municipal liability attaches under § 1983 when a plaintiff shows that "(1) [they were] deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounted to a deliberate indifference to [plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. City of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020).

Plaintiffs contend that the City, acting through Defendants, adopted and carried out an unconstitutional policy or custom targeting firefighters who sought religious exemptions from COVID-19 vaccination. On August 9, 2021, Governor Jay Inslee issued Proclamation 21-14 requiring healthcare workers, including firefighters, to be vaccinated against COVID-19 by October 18, 2021. Dkt. No. 14 ¶¶ 28, 109. The City of Redmond implemented the Proclamation through Mayor Birney's September 30, 2021, Executive Order ("EO"). *Id*. ¶ 67. The Executive Order required all Redmond firefighters meeting the definition of "Health Care Provider" to be vaccinated by October 18, 2021, but authorized the HR Director to grant "reasonable accommodation based on a disability or a sincerely held religious belief"

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 4

so long as they "do not cause an undue hardship for the City." Dkt. No. 12-1 at 19. Plaintiffs allege that despite this accommodation provision, Defendants carried out a coordinated "action plan" designed to ensure that no unvaccinated firefighter would actually receive one. The alleged plan included preemptively offering accommodation positions to vaccinated firefighters, withholding notice of open positions from Plaintiffs while they were on leave, misrepresenting to other employees that unvaccinated firefighters were "not interested" in available positions, and telling Plaintiffs that no positions were available when they were in fact open. Dkt. No. 14 ¶¶ 134, 139, 143–52, 155–56, 158, 316. The Court addresses each of Plaintiffs' *Monell* theories in turn.

Plaintiffs' custom theory cannot succeed because the conduct they describe was not of "sufficient duration, frequency and consistency" to constitute "a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Liability cannot rest on "isolated or sporadic incidents." *Id.* Plaintiffs identify only their own treatment over a months-long window during a once-in-a-century pandemic. COVID-19 vaccine mandates for healthcare workers were a novel response to an unprecedented public health emergency. There is no basis to conclude that Redmond had any longstanding practice of denying religious accommodations in this context, and Plaintiffs allege none.

Plaintiffs' policy theory also fails. Although the FAC alleges that the Executive Order was a "moving force" behind the constitutional deprivation, Dkt. No. 14 ¶ 300, the Executive Order on its face tracks the Governor's Proclamation 21-14, requiring vaccination for healthcare workers while authorizing

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 5

accommodations that do not impose undue hardship. Dkt. No. 12-1 at 18–19. Plaintiffs do not dispute that the City was bound by state law to enforce the Governor's proclamation. Thus, because the Executive Order merely implements state law, it is not an independent municipal policy that can serve as the "moving force" behind the alleged constitutional deprivation. *Wilkins v. Herron*, No. 24-80, 2024 WL 5200177, at *2 (9th Cir. Dec. 23, 2024), *cert. denied*, 146 S. Ct. 176, 223 L. Ed. 2d 57 (2025).

Plaintiffs' reliance on *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992), for the proposition that a single policy decision can give rise to *Monell* liability does not save their claim. A "policy of action" for *Monell* purposes is "one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). The Executive Order does neither. It required vaccination but expressly authorized religious accommodations. Plaintiffs' grievance is not with that policy but with how Defendants Sheppard and Laird carried out the accommodation process. Whatever the merits of those allegations, they describe individual conduct in implementing a facially lawful policy, not an unconstitutional municipal policy actionable under *Monell*.

Plaintiffs' ratification theory also falls short. A municipality may be liable if a final policymaker ratifies a subordinate's decision and the basis for it. *Christie v. Iopa*, 176 F.3d 1231, 1238–39 (9th Cir. 1999). But "[t]he mere failure to investigate the basis of a subordinate's discretionary decisions" is not ratification. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988). Ratification requires that the

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 6

policymaker have actual knowledge of the unconstitutional act and make "a deliberate choice to endorse" it. *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014). Plaintiffs rely on statements Defendant Laird allegedly made to Plaintiff Peterson about Mayor Birney's "intentions"—that the Mayor wanted "consequences for the unvaccinated" and to show they were "being treated differently." Dkt. No. 14 ¶¶ 91, 97. The FAC frames these as Birney's intentions as relayed by Laird; it is unclear whether Laird was quoting the Mayor directly or characterizing her wishes. At this stage, the Court reads the allegations in the light most favorable to Plaintiffs and assumes Birney made these statements. Even so, the statements were made before the Executive Order was issued, and before the specific conduct Plaintiffs challenge—the "action plan," the filling of accommodation positions with vaccinated employees, and the pretextual terminations. Pre-conduct statements of intent may support an inference that a policymaker instigated a course of action, but they do not establish that the policymaker had actual knowledge of, and deliberately endorsed, the particular unconstitutional acts that followed. These allegations describe instigation, not ratification. *See Coal. on Homelessness v. City & Cnty. of San Francisco*, 758 F. Supp. 3d 1102, 1139–40 (N.D. Cal. 2024).

To the extent the FAC's allegation that Defendant Laird "lacked both training and experience in dealing with religious accommodations," Dkt. No. 14 ¶ 45, can be read to assert a failure-to-train theory, it falls well short of *Monell*'s requirements. Deliberate indifference to a known need to train ordinarily requires a "pattern of similar constitutional violations by untrained employees." *Connick v.*

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 7

*Thompson*, 563 U.S. 51, 62 (2011). A single allegation about one official's qualifications does not meet that standard. Plaintiffs did not attempt to develop this theory in their opposition, confirming its abandonment. *See Bennett v. Chicago Title Ins. Co.*, No. C13-1354RSL, 2013 WL 6795167, at *2 (W.D. Wash. Dec. 17, 2013).

Accordingly, the Court dismisses Plaintiffs' *Monell* claims. Because Plaintiffs have already amended their complaint once with the benefit of extensive discovery from the parallel Title VII case, and because the deficiencies identified above are structural rather than factual, further amendment would be futile. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). The *Monell* claims are dismissed with prejudice.

## 4.2    The Court does not dismiss on issue preclusion grounds.

Defendants argue that Plaintiffs' claims are barred by the doctrine of issue preclusion based on the December 5 Order. Issue preclusion bars relitigating where "(1) [issues] necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party at the first proceeding." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848 (9th Cir. 2016).

Plaintiffs have refashioned their claims from the Title VII case into the § 1983 claims here. Although the factual predicates between the cases overlap substantially, the claims are not identical for purposes of issue preclusion. The Title VII claims were analyzed under a statutory framework, while the § 1983 claims

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 8

invoke the First Amendment Free Exercise Clause, which is analyzed under a distinct constitutional framework. Because the first element of issue preclusion is not satisfied, the Court does not apply the doctrine here. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746–47 (9th Cir. 2006) (all three elements of issue preclusion must be satisfied for the doctrine to apply).

**4.3    Defendants are entitled to qualified immunity on Plaintiffs' individual capacity Section 1983 claims.**

Defendants argue that Plaintiffs' individual capacity claims should be dismissed on qualified immunity grounds. "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (citation modified). Courts may address these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For purposes of qualified immunity analysis, the Court assumes without deciding that Plaintiffs plausibly alleged a constitutional violation against the individual defendants. But they fail at the second prong—whether a right was clearly established.

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). The plaintiff need not cite "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."

*Mullenix*, 577 U.S. at 12 (2015). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Rivas-Villegas*, 595 U.S. at 5–6 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

Plaintiffs have identified no precedent, existing at the time of Defendants' conduct in 2021 and 2022, holding that a municipal official violates the Free Exercise Clause by implementing a COVID-19 vaccine mandate for healthcare-providing firefighters—even one that denies particular accommodation requests or is implemented imperfectly. The cases Plaintiffs cite—*Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020); *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522 (2021); *Tandon v. Newsom*, 593 U.S. 61 (2021); *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)—stand for the broad general propositions that government may not target religious exercise for disfavored treatment and must treat similarly situated groups alike. But the Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation modified). None of these cases involves a COVID-19 vaccination policy for healthcare workers, and none addresses the specific question whether denying a firefighter's request to work unvaccinated during a pandemic violates clearly established constitutional rights.

The weight of authority confirms that this constitutional question was not "beyond debate" in 2021 and 2022. In *Curtis v. Inslee*, 709 F. Supp. 3d 1257 (W.D. Wash. 2023), aff'd, 154 F.4th 678 (9th Cir. 2025), the Honorable Robert J. Bryan granted qualified immunity to Governor Inslee on all federal claims arising from the

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 10

same Proclamation 21-14, finding that the plaintiffs pointed to "no existing precedent that 'placed the statutory or constitutional questions beyond debate.'" 709 F. Supp. 3d at 1270. The Ninth Circuit affirmed on alternative grounds without disturbing this analysis. More broadly, the Ninth Circuit has consistently upheld COVID-19 vaccine mandates for healthcare workers as constitutionally permissible and has cautioned courts against second-guessing pandemic decision-making with hindsight. *See Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1031 (9th Cir. 2025) (en banc) (COVID-19 vaccine mandate survives rational basis review); *Curtis v. Inslee*, 154 F.4th 678, 692 (9th Cir. 2025) (same, arising from Proclamation 21-14); *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1222 (9th Cir. 2025) (courts "cannot judge [employers] with the clarity of hindsight or the benefit of post-pandemic debates over what measured responses frontline employers should have taken"). Against this backdrop, reasonable officials could have concluded that implementing the Governor's vaccine mandate for healthcare-providing firefighters—including by determining that masking and testing were insufficient alternatives to vaccination—was constitutionally permissible.

Defendants are thus entitled to qualified immunity on Plaintiffs' individual capacity § 1983 claims. Because the absence of clearly established law at the time of the challenged conduct cannot be cured by amendment, dismissal is with prejudice.

## 4.4    Motion to strike.

Plaintiffs move to strike the Declaration of John Barry, Dkt. No. 22-1. Dkt. No. 29 at 8, which contains a copy of the declaration Dr. Thomas Rea submitted in

the Title VII case. But "a defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation modified). Because the FAC refers extensively to Dr. Rea and his letter, which Plaintiffs argue forms part of the basis of their *Monell* claim, these materials are incorporated by reference. Dkt. No. 29 at 13; Dkt. No. 14 ¶¶ 60, 73, 98, 209, 253–254, 316.

Accordingly, the Court DENIES Plaintiffs' motion to strike; the Court, however, does not rely on the declaration to resolve factual disputes but considers it only to provide context for Plaintiffs' allegations.

## 5. CONCLUSION

Accordingly, Defendants' motion to dismiss, Dkt. No. 22, is GRANTED and Plaintiffs' case is DISMISSED WITH PREJUDICE.

Dated this 13th day of May, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS - 12